## UNITED STATES COURT OF INTERNATIONAL TRADE

——————————————————————————
                                    :

Amazon.com, Inc., Amazon.com Services LLC,  :
BOP LLC, and A2Z Development Center LLC,  :
                                      :

                 Plaintiffs,  :

                          :
                    v.  :  Court No. 21-00372
                          :

UNITED STATES OF AMERICA;  :
OFFICE OF THE UNITED STATES TRADE  :
REPRESENTATIVE; and U.S. CUSTOMS &  :
BORDER PROTECTION,  :
                          :
                          :

               Defendants.  :
                          :
——————————————————————————:

## COMPLAINT

Amazon.com, Inc., Amazon.com Services LLC, BOP LLC, and A2Z Development Center LLC (collectively "Amazon" or "Plaintiffs"), by and through their attorneys, allege and state as follows:

1.     This action concerns the unlawful expansion of the scope of Section 301 of the Trade Act of 1974 by imposing tariffs on imports from the People's Republic of China, including on what have commonly been referred to as "List 3" items (accounting for an approximate trade value of $200 billion) and "List 4A" items (accounting for an approximate trade value of over $100 billion). *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (publishing List 3); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019) (publishing List 4A).

2.     In August 2017, at the President's direction, USTR initiated an investigation into Chinese laws, policies, practices, and actions related to intellectual property, innovation, and technology, and their impact on trade, under Section 301(b) of the Trade Act of 1974 ("Trade Act"). That Act then required USTR to determine what action to take, if any, in regard to such imports within 12 months after initiation of that investigation. But USTR failed to issue the List 3 duties (or subsequently the List 4A duties) within that window, which closed on August 13, 2018. 19 U.S.C. § 2414.  Further, neither the Trade Act nor the Administrative Procedure Act ("APA") authorized the imposition of import duties beyond the remedial purpose provided by statute.

3.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." Id. § 2417(a)(1)(B), (C). Section 307 does not provide the authority for Defendants to impose tariffs on other imports from China that were outside the scope of the original investigation.

4.     In addition to being in violation of the Trade Act, the List 3 and 4A additional duties are also unconstitutional because only Congress is authorized to levy tariffs, which it did not do for List 3 and 4A, and the List 3 and 4A additional tariffs were imposed in violation of the Fifth Amendment due process requirements.

5.     The Court should set aside Defendants' actions as *ultra vires*, unconstitutional and otherwise contrary to law, as well as order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A.

## JURISDICTION

6.    The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" on the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7.    Plaintiffs are importers of various goods subject to List 3 or List 4A tariffs.

8.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.    The Office of the United States Trade Representative ("USTR") is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

10.    Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports.  CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under List 3 and List 4A.

## STANDING

11.    Plaintiffs have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA.  5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5."). Tariffs imposed by Defendants pursuant to Lists 3 and 4A adversely

3

affected and aggrieved Plaintiffs because, as importers of covered items, they were required to pay these impermissible duties.

## TIMELINESS OF THE ACTION

12.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). This action was timely commenced "within two years after the cause of action first accrue[d]." *Id.*

13.    Plaintiffs contest the actions taken by Defendants, which resulted in the imposition of List 3 and List 4A duties. List 3 was published on September 21, 2018 as *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018). Under the Notice, additional duties at a rate of 10% *ad valorem* became applicable to merchandise entered for consumption or withdrawn for consumption on or after September 24, 2018. The rate of duty increased to 25% *ad valorem* for merchandise entered for consumption or withdrawn for consumption on or after January 1, 2019.

14.    List 4A became applicable to listed merchandise entered or withdrawn for consumption on or after September 1, 2019. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed Red. 45,821 (Aug. 30, 2019).

15.    Plaintiffs' cause of action accrued at liquidation, when the final assessment of duties was fixed. Plaintiffs have imported merchandise subject to List 3 and List 4A and paid the Section 301 duties. Thus, this challenge properly encompasses all liquidations of entries assessing List 3 and List 4A duties that occurred in the two years prior to the date of this Complaint and all subsequent liquidations.

16.     Alternatively, Plaintiffs' claims accrued upon its deposit of List 3 and List 4A tariffs at the time of entry, and thus Plaintiffs have timely filed this action with respect to all such entries filed within the previous two years of this action.

17.     Alternatively, Plaintiffs' cause of action with respect to List 4A entries accrued on September 1, 2019, the date of the USTR's action, and Plaintiffs have timely filed this complaint with respect to all entries made after this date.

## RELEVANT LAW

18.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.   19 U.S.C. § 2411(b).   If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  *Id.* § 2411(b), (c)(1)(B).

19.     Section 304 of the Trade Act (19 U.S.C. § 2414) requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  *Id.* § 2414(a)(1)(B), (2)(B).

20.     Section 307 of the Trade Act allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act under certain circumstances, such as when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.     USTR's Investigation

21.     On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's

laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" regarding intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation."  *Id.*

22.     Four days later, USTR formally initiated an investigation on August 18, 2017 into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

23.     Seven months later, USTR released a report on March 22, 2018 announcing the results of its investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018) ("Section 301 Report"), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL .PDF.  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce."  *Id.* at 17.   USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and

approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. companies to Chinese companies on terms that favor Chinese recipients, *id.* at 55; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

24.     On the same date, USTR published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.     USTR   also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

**II.     Lists 1 & 2**

25.     Between April and August 2018, Defendants acted to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing duties on imports from China set forth in what was called "List 1" (accounting for an approximate trade

value of $34 billion), and then subsequently on an additional group of imports set forth in "List 2" (accounting for an approximate trade value of $16 billion), as detailed further below.

26.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

27.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

28.    At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation.  *Id.*  USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion."  *Id.* at 28,711-12.

29.    On August 16, 2018, USTR published notice of the final list of products subject to an additional duty of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains $16 billion."  *Notice of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823 (Aug. 16, 2018).

## III.    List 3

30.    Beginning in March 2018, Defendants dramatically expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports worth more than $500 billion. Defendants did so for reasons unrelated to the unfair practices that USTR had investigated beginning in 2017 under Section 301.

31.    On June 18, 2018, President Trump directed USTR to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion, despite USTR having not yet implemented List 1 and List 2.  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://trumpwhitehouse.archives.gov/briefings-statements/statement-president-regarding-trade-china-2/.

32.    USTR stated that it would design the proposed duties on $200 billion in goods from China to address China's threatened retaliatory measures, rather than any of the harms identified

in its Section 301 investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0 (explaining that, although Lists 1 and 2 "were proportionate and responsive to forced technology transfer and intellectual property theft by the Chinese" identified in the investigation, the proposed duties for a third list of products were necessary to respond to the retaliatory and "unjustified tariffs" that China may impose to target "U.S. workers, farmers, ranchers, and businesses").

33.     Thereafter, President Trump publicly expressed, in a tweet, his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations.

34.     Despite these warnings from Defendants, China retaliated by imposing 25% *ad valorem* tariffs on $50 billion in U.S. goods implemented in two stages of $34 billion and $16 billion on the same dates the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).

35.     A little over a week after China imposed its first round of retaliatory duties, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion."  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83

Fed. Reg. 33,608, 33,608 (July 17, 2018).  As authority for its proposed action, USTR invoked

Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify or terminate any

action, subject to the specific direction, if any, of the President with respect to such action, . . . if

. . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id*.

at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).  USTR initially set a deadline of August 17, 2018 for

initial comments; August 20 to 23, 2018 for a public hearing; and August 30, 2018 for rebuttal

comments.  *Id*. at 33,608.

36.     In its notice, USTR confirmed that it had relied on China's decision to impose

"retaliatory duties" as the primary basis for its proposed action.  *Id*. at 33,609 (asserting as

justification "China's response to the $50 billion action announced in the investigation and its

refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion of trade

value in its proposed action to the level of retaliatory duties imposed by China on U.S. imports,

noting that "action at this level is appropriate in light of the level of China's announced retaliatory

action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion

in 2017)."  *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of

U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action

must cover a substantial percentage of Chinese imports.").  Although it pointed to China's

retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S.

commerce resulting from the unfair practices related to technology transfer, intellectual property,

and innovation that USTR had investigated under Section 301, nor did USTR suggest the

additional trade value represented by List 3 and List 4A tariffs was commensurate with harm

caused to the United States subject of the Section 301 investigation.  *See id.*

37.    USTR's contemporaneous press statements corroborated the contents of its notice, confirming that China's retaliatory duties motivated the proposed expansion of the previously imposed Section 301 tariffs to cover billions more dollars of imports—as opposed to any finding of need for additional tariffs to remedy harm identified in the Section 301 investigation. Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

38.    Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory duties, USTR would propose to increase the additional duty from 10% to 25% *ad valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section 301, he stated that China "[r]egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

39.    Shortly thereafter, USTR formally proposed "rais[ing] the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent."  *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR set new dates for a public hearing over six days ending on August 27, 2018.  *See id.*; *see also* OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

40.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018 as the new deadline for both *initial and rebuttal* comments from the public.  *Id.* at 38,761.  That adjustment prevented both USTR and the public from considering initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to five minutes.  *Id.*  Approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.  List 3 Docket, https://www.regulations.gov/docket?D= USTR-2018-0026.

41.     Eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China." THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, President Trump made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 duties) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an additional $267 billion tariff action—"if China takes retaliatory action against our farmers or other industries." *Id.*

42.     USTR published notice of another list of products subject to an additional duty, commonly known as "List 3." 83 Fed. Reg. 47,974.  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019.  *Id.* at 47,975.  USTR determined that the additional duty would apply to all listed products that enter the United States from China on or

after September 24, 2018.  *Id.*  USTR did not respond to any of the over 6,000 comments that it received nor did it address any of the testimony provided by roughly 350 witnesses pursuant to the hearing and comment period on this action.  *Id.*

43.     As legal support for its action, USTR pointed to Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under [Section 301] if . . . the burden or restriction on United States commerce of the denial [of] rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased."  *Id.* at 47,974.  USTR stated that the burden on U.S. commerce "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."  *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."  *Id.*

44.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations.   Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 duty rate from 10 to 25%.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of*

*Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

45.     The trade negotiations ultimately fell apart.  In May 2019, USTR announced its intent to raise tariffs on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the day of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also Implementing Modification to Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892 (May 15, 2019).  The notice cited China's decision to "retreat from specific commitments made in earlier rounds [of negotiations]" as the basis for the increase in the duty rate.  *List 3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  USTR did not seek public comment, but simply announced that the increase would occur.  *Id*

46.     Recognizing that List 3 would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products from the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg.* 29,576 (June 24, 2019). USTR granted a limited number of these requests on a rolling basis through June 19, 2020. *Notice of Product Exclusion and Amendments: China's Acts, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 38,000 (June 24, 2020).

15

47.     The duties imposed on products covered by List 3 remain in effect as of the date of this complaint.

**IV.     List 4A**

48.     Eight days after it published notice of its decision to increase the duty rate on imports covered by List 3, USTR announced its intent to proceed with yet another list – List 4 – covering even more products subject to additional duties.  Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth an estimated trade value of $300 billion.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce."  *Id.*

49.     Similar to the process it followed for List 3, USTR invited the public to comment on the proposed List 4 and participate in a hearing.  *Id.*  The timeline for participation in the hearing and the submission of comments left little room for meaningful input:  USTR required witnesses to submit drafts of their testimony by June 13, 2019, four days before the deadline for fully developed written comments (which was only a month after List 4 was proposed), and then it again limited witnesses to five minutes of testimony at the hearing. Nonetheless, the public submitted nearly 3,000 comments.  List 4 Docket, https://beta.regulations.gov/document/USTR-2019-0004-0001.

50.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl, President Trump publicly announced that the List 4 tariffs would become effective September 1, 2019 at a rate of 10% *ad valorem*.  THE WHITE

HOUSE, *Remarks by President Trump Before Marine One Departure* (Aug. 1, 2019), *available at* https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-marine-one-departure-56/.

51.     On August 20, 2019, USTR issued a final notice adopting List 4, but splitting the list of impacted products into two tranches, List 4A and List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A imposed a 10% *ad valorem* duty on goods worth roughly $112 billion, effective September 1, 2019. *Id.* List 4B imposed a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to state that its determination "takes account of the public comments and the testimony." *Id.* at 43,305.

52.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, asserting that those provisions allow it to modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304. But instead of finding any increased burden on U.S. commerce imposed by the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

53.     Ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4, "China responded by announcing further tariffs on U.S. goods."  *Id.*  USTR also once again cited China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action.  *Id.*

54.     Recognizing that List 4A would cause substantial harm to U.S. companies and consumers, as well as the U.S. economy, USTR in June 2019 invited the public to seek exclusions from List 4A duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products from the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (Oct. 24, 2019). USTR granted a limited number of these requests on a rolling basis through August 5, 2020. *Notice of Product Exclusions and Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,627 (Aug. 11, 2020).

55.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional duties of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447 (Dec. 18, 2019).  USTR also stated its intent to reduce by half (i.e., to 7.5%) the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, *Notice of Modification of Section 301*

*Action:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

56.    The duties imposed on products covered by List 4A remain in effect as of the date of this complaint.

57.    USTR has never published any explanation or provided any evidence as to how the List 3 or List 4A additional tariff duties were related to the stated purpose and subject of the 301 Investigation: China's policies and practices regarding intellectual property and technology transfer. President Trump's contemporaneous statements instead characterize the List 3 and List 4A additional duties as generating revenue for the U.S. Treasury. *See Charles Benson chats one-on-one with President Trump, Jul. 12, 2019 (https://www.youtube.com/watch?v=xFfsDj9Lhds)*.

### STATEMENT OF CLAIMS
### COUNT ONE
### (VIOLATION OF THE TRADE ACT OF 1974)

58.    Paragraphs 1 through 57 are incorporated by reference.

59.    The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

60.    Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b).  USTR failed to predicate its actions giving rise to List 3 and List 4A on any such determination.

61.    If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action to take, if any," within "12 months after the date on which the investigation is initiated."  19 U.S.C.

§ 2414(a)(1)(B), (2)(B).  USTR's actions giving rise to List 3 and List 4A occurred in September 2018 and August 2019, respectively, well over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

62.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act when the burden or restriction imposed on U.S. commerce by the investigated foreign country's unfair acts, policies, or practices increases or decreases.  19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs imposed pursuant to an investigation conducted pursuant to Section 301 of the Trade Act for reasons unrelated to the acts, policies, or practices that USTR investigated. Congress did not provide authorization to USTR to expand its focused investigatory findings.

63.     Section 307 also authorizes USTR to "modify or terminate" an action under Section 301(b) if the initial action taken by USTR "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act, however, does not provide Defendants with the authority to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

64.      The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). And the APA instructs the courts to "set aside"—i.e., vacate—any agency actions that are unlawful. 5 U.S.C. § 706.

65.     Plaintiffs are therefore entitled to entry of a declaratory judgment holding that Defendants' actions imposing duties on List 3 and List 4A are *ultra vires* and contrary to law, and an order vacating those actions.

**COUNT TWO**
**(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

66.    Paragraphs 1 through 65 are incorporated by reference

67.    The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

68.    As discussed in Claim One above, Defendants exceeded their statutory authority in promulgating List 3 and List 4A and therefore acted unlawfully when publishing and collecting duties on imports of products on List 3 and List 4A for the reasons set forth in Count One.

69.    Furthermore, Defendants failed to offer any explanation for or evidence to support their assertion of an "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation, so as to justify the imposition of duties on billions of dollars of additional products.

70.    Defendants also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain the reasons for their decisions.  Defendants' preordained decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A whose value exceeds $300 billion.

71.    The Court should therefore "set aside"—i.e., vacate—Defendants' final actions promulgating Lists 3 and 4(a).

**COUNT THREE**
**(VIOLATION OF ARTICLE 1 OF THE U.S. CONSTITUTION)**

72.     Paragraphs 1 through 71 are incorporated by reference.

73.     From statements made by President Trump and other officials in the Administration, at least one key reason for the imposition of the List 3 and List 4A additional duties was to collect revenue for the federal general treasury.

74.     To the extent the List 3 and List 4A additional duties were revenue collection measures, they are beyond the scope of actions USTR or President are authorized to take by the Trade Act of 1974 and, therefore, are unlawful.

75.     The Constitution enumerates the separate powers of each branch to ensure that no branch encroaches on the authority reserved to another branch.

76.     List 3 and List 4A additional duties are unconstitutional because only Congress has the constitutional power to "lay and collect taxes, duties, imposts and excises." U.S. Constitution, Article 1, Section 8, Clause 1.

**COUNT FOUR**
**(VIOLATION OF THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION)**

77.     Paragraphs 1 through 76 are incorporated by reference.

78.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "No person shall… be deprived of life, liberty, or property, without due process of law."

79.     Defendants promulgated List 3 and 4A in violation of the Due Process Clause when they failed to provide Plaintiffs with a sufficient opportunity for comment as well as a sufficient opportunity to present their views on those proposed additional tariffs in a hearing (and have those views meaningfully considered by agency decisions-makers), failed to consider relevant factors when making their decisions, and failed to adequately explain their rationale for imposing duties on List 3 and List 4A products.

22

80.     Defendants' predetermined decision-making resulted in the unlawful imposition of tariffs on imports covered by Lists 3 and 4A whose value is over $300 billion.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

(1) hold that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the laws of the United States;

(2) declare that Defendants arbitrarily and unlawfully promulgated List 3 and List 4A in violation of the APA;

(3) declare that Defendants unlawfully promulgated List 3 and List 4A in violation of the United States Constitution;

(4) vacate the List 3 and List 4A rulemakings;

(5) order Defendants to refund, with interest, any duties paid by Plaintiffs pursuant to List 3 and List 4A;

(6) permanently enjoin Defendants from applying List 3 and List 4A against Plaintiffs and collecting any duties from Plaintiffs pursuant to List 3 and List 4A;

(7) award Plaintiffs their costs and reasonable attorney fees; and

(8) grant such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 2, 2021

John Brew
Amanda Shafer Berman
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004

David R. Stepp
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071

Frances Hadfield
CROWELL & MORING LLP
590 Madison Ave, 20th Floor
New York, New York 10022

*Counsel to Amazon.com, Inc., Amazon.com
Services LLC, BOP LLC, and A2Z
Development Center LLC*

**CERTIFICATE OF SERVICE**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on August 3, 2021, copies of the foregoing Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Greta Peisch
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

/s Frances Hadfield

1